## THOMAS GIBBONS v. AARON OGDEN.

1. A replication which neither denies the matter set up by the plea nor confesses and avoids it by advancing new matter, is vicious and will be set aside.

2. In passing the act entitled " a further supplement to the act entitled an act to preserve and support the jurisdiction of this state," (*Rev. Laws* 689,) 25th February, 1820, the Legislature pushed their measures intentionally beyond the limits of our territory, in order to provide a remedy for acts done in the State of New York, derogatory to our *right of navigation;* they prohibited restraints on one side of the *filum aquæ,* because they violated our *jurisdiction;* they prohibited restraints on the New York side of the line, because they violated our *right of navigation.*

Therefore supposing this act to be constitutional, a plea which admits a restraint on the New York side of the *filum aquæ,* but justifies such restraint under the authority of the laws of New York, and by virtue of a judicial decree of the Court of Chancery of that State, is bad.

This was an action of trespass on the case brought by Thomas Gibbons against Aaron Ogden, upon the third section of the act of 25th February, 1820, entitled " a further supplement to the act entitled an act to preserve and support the jurisdiction of this state," (*Rev. Laws* 689,) to recover damages, because the said Thomas Gibbons had been restrained and enjoined from navigating, with his steam boat, the waters between the ancient shores of New York and New Jersey, by an injunction issued out of the Court of Chancery of the State of New York, in a suit wherein the said Aaron Ogden was complainant, and Thomas Gibbons defendant.* The defendant pleaded, 1st The general issue.

2nd. That the plaintiff ought not to have or maintain his action against him the said Aaron Ogden, because he says, that long before the passing of the act of the State of New Jersey, in the plaintiff's declaration mentioned, entitled " a

NOTE.—See the declaration given at large in 1 *Halst. Rep.* 286, where this case came before the court upon a demurrer to the declaration.

---

Gibbons *v.* Ogden.

---

further supplement to the act entitled an act to preserve and support the jurisdiction of this state," to wit, on the twentieth day of October, in the year of our Lord one thousand eight hundred and eighteen, he the said Aaron Ogden, presented his bill of complaint against the said Thomas Gibbons, in the Court of Chancery of the State of New York, to his Honor James Kent, Esq., Chancellor of that state, wherein he the said Aaron Ogden, set up a claim under the acts of the legislature of the State of New York, which are stated by the said plaintiff in his declaration aforesaid, to an exclusive right to navigate with boats moved by fire or steam on the waters within the territory and jurisdiction of that state, which lay between the city of New York and Elizabeth Town Point or Elizabeth Town, to the whole extent of the township, and complained that he the said Thomas Gibbons, in violation and disturbance of such right of the said Aaron Ogden, then in his full possession, had run two steam boats moved by fire or steam, to him the said Thomas belonging, the one called the Stoudenger or Mouse, and the other called the Bellona, on waters within the territory and jurisdiction of the State of New York, between the city of New York and Elizabeth Town as aforesaid, and thereupon prayed the aid and interposition of that Honorable Court, according to its general equitable jurisdiction as theretofore used and exercised, and that he the said Thomas Gibbons might be restrained thereby on the grounds in the said bill mentioned and set forth, from navigating with his two steam boats in manner aforesaid; whereupon it was so proceeded in that same court, that at a Court of Chancery, held for the State of New York, at the city of Albany, in that state, on the twenty-first day of October, in the year aforesaid, present the Honorable James Kent, Esq., Chancellor as aforesaid, it was ordered that the said bill should be filed and that thereupon a writ of injunction should issue out of and under the seal of that court, to restrain him the said Thomas Gibbons from navigating on the waters within

the State of New York, between Elizabeth Town in the State of New Jersey, or any place in the township of Elizabeth Town as aforesaid, and the city of New York, which order was according to the usual course of that court as practised in similar cases before the passing of the acts of the legislature of the State of New York mentioned in this behalf in the declaration of the said plaintiff as aforesaid, and that the said bill was duly filed accordingly; all which by the files, proceedings and records of the same court remaining before it fully appears, of which he the said Aaron Ogden produces here before this court a copy duly authenticated according to the act of Congress in such case made and provided. And that he the said Aaron Ogden, in pursuance of such order of the Court of Chancery of the State of New York so made as aforesaid, caused and procured to be sued out of the same Court of Chancery according to the usual course of that court as practised long before the passing of the acts of the legislature of the State of New York hereinbefore mentioned, to wit, on the twenty-fourth day of October, in the year last aforesaid, a writ of injunction bearing date on that same day and year, whereby he caused the said Thomas Gibbons to be restrained and enjoined from navigating with his said steam boat Bellona, moved by steam or fire as aforesaid, the waters on the bay of New York, that were within the territory and jurisdiction of the State of New York, on the passage or route between the city of New York and Elizabeth Town Point or Elizabeth Town, or any part thereof, to and from the places last mentioned respectively, which said waters lay between the ancient shores of the State of New York and the State of New Jersey, and to the eastward of the midway line between those shores and within the port and harbor of the city of New York, which said order and writ of injunction are the same that are set forth in this behalf in his said declaration and not other or divers : Without this, that the said Aaron Ogden, has caused or procured the aforesaid Thomas Gibbons to be enjoined or

restrained from navigating as aforesaid, elsewhere excepting in that part of the bay of New York, on the passage or route between the city of New York and Elizabeth Town Point, Elizabeth Town or any part thereof, lying between the ancient shores of the State of New York and the State of New Jersey, which is within the territory and jurisdiction of the State of New York, to the eastward of such midway line as aforesaid, and within this port and harbor as aforesaid in the transportation of passengers and freight to. and from the city of New York, and this he is ready to verify, wherefore he prays judgment if the said plaintiff his action aforesaid, against him the said Aaron Ogden, ought to have and maintain, &c.

The plaintiff replied as follows, that he the said Thomas by reason of any thing in the said second plea alleged, ought not to be barred from having and maintaining his aforesaid action thereof against him the said Aaron, because he says that on the second day of April, in the year eighteen hundred and twenty, and from thence continually until the time of commencing this suit, and during all the intervening time between the said second day of April, in the year eighteen hundred and twenty, and the said time of commencing this suit, to wit, at Newark aforesaid, the said Thomas Gibbons under and by virtue of the said two orders, and the said writ of injunction in the first count of the plaintiff's declaration mentioned, sued out and prosecuted by virtue of the said acts of the Legislature of the State of New York, in said first count mentioned, in the suit in the Court of Chancery of the State of New York, wherein he the said Aaron Ogden was complainant in the said first count mentioned, was restrained and enjoined from navigating with his said steam boat, the Bellona, in said count mentioned, the whole of the waters in the bay of New York, on the passage or route between the city of New York and Elizabeth Town Point, or Elizabeth Town, or any part thereof, which said waters lie between the ancient shores of the State of New

York and the State of New Jersey. And because he the said Thomas Gibbons further saith, that on the second day of April, in the year of our Lord eighteen hundred and twenty, and from thence continually until the time of commencing this suit, and during all the intervening time between the said second day of April and the said time of commencing this suit, to wit, at Newark aforesaid, the said Thomas Gibbons, under and by virtue of the said orders and the said writ of injunction, in the second count of the plaintiff's declaration mentioned, sued out and prosecuted under color of the said acts of the legislature of the State of New York, in said second count mentioned, in the said suit in the Court of Chancery of the State of New York, wherein he the said Aaron Ogden was complainant in said second count mentioned, was restrained and enjoined from navigating with his said steam boat, the Bellona, in said second count mentioned, the whole of the waters in the bay of New York, on the passage or route between the city of New York and Elizabeth Town Point or Elizabeth Town, or any part thereof, which said waters lie between the ancient shores of the State of New York and of the State of New Jersey. And this he the said Thomas Gibbons prays may be inquired of by the country, &c.

To this replication the defendant demurred, and assigned for causes of demurrer.

1. That the replication aforesaid is not in answer to the matters contained in the aforesaid plea, inasmuch as the said replication takes issue to the country, as to the whole trespass in the declaration alleged, as well within the territory of the State of New York, on the bay of New York, as elsewhere; whereas he, the said Aaron Ogden, in his plea aforesaid, has confessed and avoided the said supposed trespass as far as regards the same within the territory of the State of New York, on the easternmost side of the midway line between that state and the State of New Jersey, and has traversed any such trespass in any other place whatever.

2. Because the said plaintiff should have demurred to the said whole plea, as insufficient in law, or at his election have traversed the special justification therein contained, or have joined in the defendant's traverse in his said plea set forth, and not have traversed both in the manner as contained in the said replication.

This cause was argued by *A. Ogden* and *R. Stockton,* for the defendant, and *G. Wood,* for plaintiff.

The CHIEF JUSTICE having before he came on the bench been retained as counsel did not sit upon the argument of the cause.

FORD, J. This action, which is brought on the third section of the act of 25th February, 1820, *Rev. Laws,* 689, brings under consideration the true construction of that statute, and the validity of the pleadings. The statute in question, which is entitled, "A further supplement to the act entitled, an act to preserve and support the jurisdiction of this state," provides, that if any citizen of this state shall be enjoined or restrained by the Court of Chancery of New York, under color of an act of the legislature of that state, from navigating with his steam boat, "the waters between the ancient shores of New Jersey and New York," the plaintiff in such injunction shall be liable to all damages occasioned to the owner of the steam boat by such restraint. The plaintiff, having brought an action, has filed a declaration under this section to the following effect: That the defendant had sued an injunction against him, out of the Court of Chancery of New York, under color of several acts of the legislature of that state, whereby he, the plaintiff, was restrained from navigating with his steam boat, "the waters of the bay of New York, lying between the ancient shores of the two states."

The defendant, in his plea to the foregoing charge, advances the following matters: That the territorial line which divides the State of New Jersey from the State of New York, is a midway line on said water between the two

Gibbons *v.* Ogden.

shores ; on the eastern side of which line lies the territory of New York, and on the western side lies the territory of New Jersey ; and as to any restraint within the territory of New Jersey, the defendant denies it and offers a traverse of the *fact;* but as to a restraint in the territory of New York, the defendant confesses it, and justifies it as being made *there,* under the authority of *their laws* and by virtue of a judicial decree of the Court of Chancery of that state.

The plaintiff, in his replication to this plea, reasserts that he was restained on all, " the whole of the waters of the bay of New York," and concludes to the country. The demurrer of the defendant to this replication, brings up two questions before the court; first, is the replication a good one? secondly, is the plea a good one ?

As to the *first* question. The affair of a replication, which, when it does not add a *similiter,* is either to deny the matters in the plea and put them in issue to be tried by a jury, or else to confess and avoid them by advancing some new matter, seems not in this case to be at all fulfilled; it neither avers any restraint in the territory of New Jersey, nor traverses the justification of restraint in the territory of New York, as set up under the laws and under the decree of the Court of Chancery of that state; but taking no notice of either of these branches of defence, and turning wholly away from the plea, it goes back to the beginning, and merely avers over again what was before set forth in the declaration. Being therefore altogether evasive, it must, for this reason, certainly be set aside. If then the *facts* set forth in the plea, standing uncontroverted as to their truth, as they do for want of a replication, are sufficient in law to bar the plaintiff's action, the defendant must have judgment.

This therefore gives rise to the second question. Whether the matters in the plea, admitting them all to be as they are pleaded, amount to a legal defence ? And the first branch of the plea, whereby it appears that there was no restraint within the State of New Jersey, vindicates the defendant

from that part of the charge. The other branch of the plea,. which is a restraint in the territory of New York; and which the plea admits to be *true,* and justifies as a *legal act there,* because done under the sovereign authority of their laws, and a judicial decree in that state, is all that remains to be considered.

If the judicial proceedings of the State of New York are allowed, according to the constitution of the United States, to have full *credit and effect* in this court, they certainly constitute the matters contained in this branch of the plea, a perfect defence against the action. The reasons, which were assigned in the legislature, at the time of passing this act, as well as in the Court of Chancery afterwards, and more recently at the bar of this court, to shew that a decree of the Court of Chancery of New York ought *not* to receive credit and effect in this case, it is not my intention at present to review or weigh ; but as such effect has been denied to it by a decision of this court, it must be here taken for granted that I acquiesce in that decision. The act of 25th February, 1820, in determining the merits of this plea, is therefore to be our rule and guide as a constitutional act.

But it is argued, that be the act ever so constitutional, it does not extend to an action done *out of the state ;* I would observe, however, that the third section, which speaks of restraints made on " the waters between the ancient shores of New Jersey and New York," without distinguishing between one part and another, seems to prohibit restraint on any part of them ; and as the territorial line of division was fixed, by a law of 1807, midway of the two shores, a statute extending to acts done on any part of those waters, necessarily extends to acts done *on waters out of the state.* The general words, to wit: " waters between the two shores," are quite broad enough to include the waters on both sides of the line.

But it is argued as an universal rule, that *general words*, when used in a statute, ought to abate so much of their import as carries them beyond the manifest intent of the legislature; and the intent of the legislature that this statute should not operate *beyond* the limits and jurisdiction of the state, would manifestly appear from considering, first, the title of the act; and secondly, the nature of the mischief intended to be remedied.

And *first*, it is argued, that the title of the act, which the legislature expressly calls, an act to support the *jurisdiction* of this state, excludes every idea of its being intended to operate *out* of the state. In answering this remark it may be sufficient to observe, that as to part of this act, its operation was intended to be confined within the limits of the state, as is evident from its prohibiting the service of foreign process *within* our territory. Therefore the title of the act, might, in regard of this object, well be what it is; but cannot prove that this was the sole object, and that the legislature had beside it, no other object in view. The title of an act, cannot, like a proviso, restrain its provisions; for the law, upon the subject of the *title*, considers it as no part of the act, *Bacon's Ab. title statute A*, and therefore to resort to the title is almost to look out of the statute for its construction.

*Secondly.* The mischief was supposed to lie in this, that the State of New York, not admitting that her territory stopped at the midway line, but extending her claims over all the water quite over to our shores, it became necessary in order to guard against this mischief, to confine the jurisdiction of that state to her own side of the line; but that this act never intended, by pursuing her over that line into her own bounds, *there* to attack her *laws* and the doings of her *courts*, where she is allowed by the constitution to be, and must be, supreme, and the decrees of her courts valid and irresistible till they are legally reversed.

These arguments, upon an inquiry into what *should have been* the intent of the act, might be entitled to much weight and consideration; but we pursue a much drier question when we limit our judicial inquiry, as we are bound to do, to what the intent of the act *is.* Courts of law may, where the words of an act convey no clear meaning, as the means of explaining an intricate or perplexed passage, resort to a consideration of the subject matter and the nature of the mischief intended to be remedied; but where words clash with no other paragraph, section or sentence, in the same, or any other statute, carry a plain and manifest meaning, they overcome all rules of construction, and must be taken as they read. " The waters between the two shores " must mean the *whole waters,* and cannot mean that the interdicted restraint *may* be exercised on a part of them.

An assumption, that the mischief to be remedied had only a single form, and lay altogether within our own bounds, is certainly not admissible. There was another evil, exterior to our bounds, arising out of a law of the State of New York, which prohibited our navigating *her waters* with our steam boats; and as her waters lay in our passage to the sea, and were a lawful highway for our commerce, that law, interfering with our rights of navigation in her waters, was in itself, a serious mischief; and it is plain from the second section, that the legislature, instead of looking no farther than our own territory, pushed their measures intentionally beyond our limits, in order to provide a remedy for acts done in the State of New York, derogatory to our *right of navigation.* They prohibited these restraints on our side of the line because they violated our *jurisdiction;* they prohibited them on the New York side of the line, because they violated our *right of navigation.* A restraint on either side of the line being therefore contrary to this act; the plea, which confesses the fact on one side, is inconsistent with the statute, and must be disallowed and set aside.